May it please the court, Kyger Sy for the Sensing's, the appellants in this matter. This appeal centers around the District Court's use of show-calls hearings to collect restitution in a manner unlike any other seen across the country. We contend the District Court erred in at least four separate ways with respect to the show-calls hearings, initiating the proceedings without authority to do so, failing to appoint counsel, assuming the role of prosecutor in violation of due process, and disregarding Bearden v. Georgia. Because the Sensing owed significant restitution, the District Court ordered the Sensing's appearance at three separate show-calls hearings. At each show-calls hearing, the District Court, not the prosecutor, interrogated the Sensing's in hopes of collecting more restitution than the $1,250 the Sensing's were paying monthly. What's wrong generally, you know, the judge is the one who sentences people, etc. I mean, generally there is sort of a reservoir of power and authority of the district judge to inquire, you know, about the matter. I mean, how is that, at that point in things, so far feel? I know you're wanting to capture the judge as being the prosecutor, but. Yes, Your Honor. We believe that the statutory authority in this case does not grant the district court the authority to enforce orders of restitution. But if we look at 18 U.S.C. 3664, which is the collection and the procedural process of collecting restitution, we go down to subsection M1A, and we can, we find that subsection I leads us to 3612C. It grants the exclusive authority to enforce orders of restitution to the Attorney General, who has then delegated that power to collect restitution under 28 CFR 0.171. The financial litigation unit in this case, Your Honor, did nothing to initiate these proceedings. This was a district court. What I'm concerned about is how, I'm worried that the argument proves way too much, because under the theory that you just gave, the probation officer couldn't meet with the Sensing's and say, let's talk about the truck. So do you think that if the probation officer said, hey, I'm going to come over tomorrow, or you have to come to me tomorrow, and we're going to sit and talk about your financial statements, I want to talk about the USAA account, I want to talk about the truck, does a lawyer need to be present when the PO sits down and talks to the Sensing's? Your Honor, we don't believe, that is not our contention. So how is that consistent with your statutory argument? Because, but the way I take your statutory argument is, no, the only person that can do this is the financial unit of the Attorney General's office. It can't be anybody else. Well, the probation officer certainly has the right to discuss financial matters with the Sensing's. However, the proceeding itself, the show cause hearing itself, is what we contend was unreasonable and unconstitutional. But if every single thing that happened at the show cause hearing, every question, everything, it had just been done by the probation officer, obviously the Sensing's have no right to lie to the probation officer. They have no right to secret documents from the probation officer. They have no right to open lines of credit, buy new trucks, hide lump sum disability payments from the probation officer. So I don't understand how the fact that the district judge does it Yes, Your Honor. We believe that the constitutional violation with that scenario, with the scenario that we have in this case, when the district court is the one that's interrogating the Sensing's and not a probation officer, not a financial litigation unit attorney, or not even a prosecutor, that's where the line gets drawn and where we need to look at the constitutional standards. A probation officer, casual conversation, absolutely. That is 100% okay pursuant to the law and any statute. What statute says the probation officer can go and say, I'd like to talk about the USAA account? Your Honor, I apologize. I don't have a statute that suggests that. I'm not sure there is one. And there may not be, you're correct. But we would point out the fact that the Department of Justice's manual corroborates 28 CFR 0.171 that says the financial litigation unit must be the person or the entity that has to enforce these collection orders. And that simply wasn't the case here. If the financial litigation had initiated some sort of process, possibly this case would have turned different. But what we know, and we can see this in the record on page 273 and 274, the probation officer initiated the show cause hearing request. The judge signed off on it and then held three separate show cause hearings where the Sensing's had no right to counsel. They were never informed that they had a right to an attorney. They were never told that they could bring in evidence or documentation to support their case. And frankly, Your Honors, this is where the meat of the problem comes from. We have a right to counsel problem and we have a due process problem. Let me ask you this. Suppose instead of the probation officer going to Judge Aycock and saying, hey, looks like the Sensing's aren't complying with the restitution order. I see X and Y and Z in the record. I'm sorry, whether it's credit checks or purchases or USA accounts or disability, whatever it is that the probation officer finds. Do you think your clients are better off if Judge Aycock, instead of having a show cause hearing, says, okay, we're just going to have a revocation hearing? Your Honor, if I may explain that answer. So the first answer would be no. We do not believe that they would be in a better position because if the probation officer did decide to initiate revocation proceedings, they would have been afforded the right to level 32.1. They would have had proper notice to the case and they would have had an opportunity to present any evidence through their attorney at a revocation hearing. Now, the second point on that would be that if the show cause hearings were just a review but were being initiated and being prosecuted by an actual attorney and not the district court itself, maybe that is a way that we could get around this. But that's simply not what happened here. But Judge Aycock says on the record that if she had done the former, right, that if she had instead of doing the, I'm going to have a show cause hearing and try to gather the facts, instead of doing that, if I just had straight up had a revocation hearing, then your client's liberty is at stake in a way that it wasn't before. And so I don't understand how you're not better off by the fact that the judge gives the opportunity to say, come on, let's like sit together and talk about it and see if we can figure out a way to work this out. I take your point, Your Honor. Again, we would respectfully say that the right to counsel would have attached at that point. Everything in those show cause hearings we know was discussed at those three show cause hearings came up in the petition to revoke their supervision at a later point. Again, the sensing did not know that they were able to respond to the district court. And one of the things that occurred after the first show cause hearing was that extension of supervision by year. Had the district court initiated some sort of revocation hearing, perhaps the attorney could have said something to make the district court back off on the request for the extension. When everything in that testimony, everything from their testimony in those show cause hearings came back as an underlying basis for the revocation petition, that's where we believe counsel should have been appointed. Are you still pressing the argument that the waiver was not voluntary? Your Honor, we would not concede that. We do believe that violations one, two, and three had already been litigated through that extension of supervision. And the only way that we found out about it was at the revocation hearing. We had no chance to appeal that. We had no chance to object to it. And so we do believe that those three violations should have been precluded from the district court at the revocation hearing, which leaves us with violation number four, the failure to sell the two vehicles that the sensings did not own the title to. In the revocation hearing, and I believe it was the second one, it was the second one from November, the district court even suggested to the sensings that they attempt to sell those vehicles, lose money on those sales, and put themselves in worse financial position than they currently were, only so that the district court could collect more restitution per month. I'm not sure that's fair. I mean, Judge Aycock said at the revocation hearing that there was no evidence of the upside-down nature of the vehicles until she found out about that at the revocation hearing. It wasn't evident to her at all from the show-cause hearing. Are you saying that if I go back and read the transcript of the show-cause hearing, there's going to be testimony from the district court saying, I want you to lose money? No, not implicitly. Not as directly as that, but implicitly, yes. By selling there, it was, again, it was in the January show-cause hearing. The district court has those conversations with the sensings about selling their two vehicles. The district court suggests calling the title company and saying, hey, will you take a lesser amount than what is currently owed? If they will accept it, you may be upside down. You may be losing money on that sale. And at that point, the title company can either sue you or they can work with you. So, yes, we would agree that we would stand by our statement that the district court was possibly putting them in worse financial situations than they currently would have been, had they kept the vehicles. You're just asking us to vacate, I'm just clarifying, you're just asking us to vacate the revocation sentence, correct? Your Honor, this is a difficult question to answer, and I apologize, if I may. We are asking that the revocation judgment be vacated. We are asking that the court reverse and render judgment, terminating any further supervision that the sensings may be under. However, again, we never had the opportunity to challenge any of the show-cause hearings because counsel was never present. We didn't find... Okay, so, I know you say it's a difficult question to answer, I understand that. So, you're asking us to vacate the revocation sentence. There was a formal revocation hearing, correct? Yes, Your Honor, there was. And there were multiple valid grounds for revoking the supervised release, grounds to which your clients admitted, correct? Yes, Your Honor, and that would go back to what is that we believe that violations 1, 2, and 3 should be precluded from the petition to revoke. If you're asking us to vacate the revocation sentence, and there was a revocation hearing, then why shouldn't we hold that any errors in the show-cause hearings are harmless? Of course, this is a procedural quandary that we're in, because without the right to counsel, the sensings never had that opportunity to make a formal objection. When the sensings were standing before the district court pro se in a room full of adversarial opposition, they didn't have the legal knowledge to say that they were not worth being compliant. And whenever the sensings did try to answer the district court's questions, there were multiple times that the district court stated, I just don't find you credible. And that comes back up in the revocation hearing. And so that's kind of where we are. I see what you're saying, Your Honor. But what are you saying they weren't in a position to know? They weren't in a position to basically answer no to the district court. When the district court at the very first show-cause hearing suggested that they voluntarily extend their supervision, the sensings, she did say, Ms. Sensing did say, Your Honor, if I don't have to, I don't want to. But the district court follows that up with two additional questions saying, you need to talk with your probation officer about this voluntary extension. She was at the point when she visited with the probation officer to sign the waiver. The probation officer testified at the revocation hearing that Ms. Sensing was hesitant. And the only reason that she did sign was because it was the court's wish for her to extend her supervision. That's where, and I think this is kind of what we're discussing here. See, my problem, and I'm trying to stay with it, is maybe oversimplified. And that is, in this instance, looks to me like the district judge is trying to help these people in the sense of not pulling the trigger too quickly on a revocation proceeding. So the show-cause is sort of a cranking up the revocation, ought to happen, yada, yada, yada. And so, it doesn't look like the show-cause is like a ruse for getting after the people. So if the district judge is exercising some discretion to assist them, then you want us to say, got you, no, you can't do that. So then the district court just, okay, I won't try to help anybody. We'll just crank up the revocation. If the issue drops, then your client gets revoked. So, I mean, we're all about touching first, second, and third, but I'm just trying to figure from what I've read, judge seems like she's trying to get underneath this and so forth. You say, well, I mean, all the stuff she asked, they're the ones opening accounts and this and that and the other. They have a greater awareness of the facts than the lawyer's going to have. I get the point about the lawyers. I'm not saying it's untenable. I'm just trying to figure in the bigger picture of things, are you worse off or better off in terms of this system than if you get some pronouncement this is done and then sometime later, it's just the formal revocation, the client's there and the lawyer, you, up the creek trying to get the judge to change their mind about, I'm going to give you additional time because I'm making my little speech, but I'm just trying to figure out, I read this, there are these other cases cascading out there and on and on, and it's just a little worrisome to me that when I read the judge is trying to assist people to understand the implications of what, $600,000 worth of restitution, yeah, yeah, yeah, that if you get what you asked for, do you really help the clients or more to the point, similarly situated people there. Maybe I'm trying to circle back to Judge Willard's question of defining exactly what it is you really want besides some pronouncement on ten tablets that a judge can't have a show cause and a judge becomes a prosecutor and all that sort of stuff. It just seems like to me, you got to go back in front of that judge again, but anyway, strike that from the record. I didn't say that. I'm just trying to think through real world. That's why we put the case on for argument to see, okay, where it is. Come back, and he probably understood it, but I didn't because I was thinking. Judge Willard's point of if we reduce to the narrowest terms and simply pay back for a do-over, not all these pronouncements, your client's still in the soup, right? Your Honor, there's a lot to unpack there. Give him two minutes. I mean, I talked for probably three, but that's the prerogative of being in the middle chair, I guess. I don't know. Thank you, Your Honor. My colleagues will forgive me, hopefully. To the precursor question, we would suggest that these show cause hearings are essentially that. They can be a precursor to either a revocation, or they can be more akin to a contempt proceeding. And again, all of the rights that were granted under contempt proceeding would include the right to counsel. Now, when we're looking at it from a due process standpoint, we have the district court reviewing the show cause hearings. She's asking the questions. She's basically fact finding. She then goes before the revocation hearing knowing all of the information that she's just learned from these show cause hearings without counsel, and uses it without any objections by defense counsel, and asks the court and asks the sensing to go ahead and sell two vehicles. We believe that that alone, selling two vehicles that they do not own the title to, would be a violation of law. There's no way that the sensing would be able to do that. If we look at other cases that were cited in the amicus brief, there's similar situations there where the district court has asked these defendants to do things that we just don't believe the district court had authority to do. Such as, if we look at Mr. Max, pardon me, Nathaniel Brown, one of the conditions was to order Mr. Brown to go ahead and sell his house. He had in the district court said, the district court stated, why don't you sell that house and get your wife's permission to do so. We look at McCaslin, she ordered Mr. McCaslin to empty his wallet in the courtroom, which contained $630. We look at Veronica Rice, where she was had over $800 from her social security payments, yet her bills totaled over $600, and she was still making $200 a payment a month for her restitution, sometimes going without any food or clothing for that month, and having to find additional means to support herself. These are the things that we believe have, that need to be addressed by the show calls. If defense counsel had been there, there's a possibility that none of these things would have happened. Okay. All right. Thank you, your honor. I'm giving you a chance to express, and I'm not, by my comments, saying that your arguments aren't well taken, they may be legally correct, etc. It's just, you know, kind of, just want to be clear about it. So my apologies to my colleagues for digressing, but you've saved rebuttal time, so let's see what the government has to say on the question. Thank you, your honor. May it please the court, my name is Clay Dabbs, and I represent the government in this matter. I want to provide two, kind of, broad defenses of these hearings. The first is, if you look at, if you look at the statutes that apply, 3572D3 says if there's a material change in the financial condition of a defendant, the court may, quote, on its own motion, adjust the payment schedule of restitution. If you look at 3664K, if there's a material change in the financial condition, there's a notice to the victim requirement in 3664K. But it also provides that the court may, quote, on its own motion, adjust the payment schedule. 3664M, in addition to referencing the collection statute, says you can collect restitution by all other available means. And then 3664N says if a defendant receives substantial financial resources, that money will be paid to restitution. So back to your point, if probation comes in and says, judge, I just met with the sensings. They just got a $20,000 payment from disability. Well, the judge on her own motion can just issue an order right there, and that money would get paid to restitution. There wouldn't even be a hearing because she's just adjusting the payments. And so she actually doesn't even have to have a hearing to order the payment in that case. So she's taking another step of saying, let's have a hearing and we can talk to these folks and see what's going on. And at the hearing, you have the court, the probation, and the flu, the financial litigation unit. So there is an AUSA at the hearing, but it is not a prosecutor. That may not make any difference, but it's a civil AUSA who collects on behalf of the U.S. Attorney's Office, does things like liens and garnishments and that kind of thing. My other point would be that probation is, a probation officer is essentially an agent of a defendant about all sorts of personal matters. What did you do last weekend? How did you buy that watch? Who paid for that car? Look, you can't have that car if you owe restitution. All those kinds of questions are totally appropriate and happen all the time. So the judge can do what the probation officer can do in that case. And so the priority here should be the victims. The priority should be paying back the victims. In the case of the sensings, they were sentenced to time served and they were paying $150 a month each. So they were paying $300 a month when the first show cause hearing happened. And it was at that hearing that Judge Acock realized they had $6,500 in income a month by their own admission and that they had these car payments and that they had this lump sum disability payment. So that's a material change in their financial condition. Those cars are not on the PSR's financial statement. The PSR shows about $3,700 a month in income. And they're claiming $7,500 a month in expenses. That's $90,000 a year in expenses. And so it totally makes sense for the judge to look at them and say your expenses are way too high if you owe hundreds of thousands of dollars in restitution. So they were not, the judgment says they should pay $150 a month or 10% of their income. Well, they were not paying 10% of their income. And, I mean, I think you'd be surprised at how little restitution is actually collected if you don't do anything other than just cash the it's human nature. The defendant's going to make the minimum payment. And unless someone goes out and figures out what their income actually is, especially when they're self-employed, it's hard to get the 10% of the income. If they have a salary, well, you can go and you can garnish that. If they have some kind of government payment, you can go and you can get part of that. They get part of their tax refund. But in this case where they're making this money at the And they've been able to make that $1,200 payment. So that's since 2020. So when you combine the payment of the disability lump sum and the $1,250 a month, I mean, they've paid $30,000 or $40,000 since this first show cause hearing, whereas they would have paid $300 a month together for two years. And then after they're off of supervised release, obviously, the obligation is still there, but collecting it is another story. Let me ask you a question. Are the show cause hearings a part of the Northern District of Mississippi culture, so to speak, internal operating procedure? I mean, I know the North, the South. I mean, all these courts have different permeations, kind of how things are done, so to speak. So is this show cause kind of historically? I mean, is it just part of the way Judge Acock does it or is it part of the Northern District? Judge Acock is the only judge that does them. And they've been going on for about 10 years or more. I don't know exactly when they started, but at least 10 years. This is the first time that I'm aware of that we've had anything come up to the Fifth Circuit. And certainly Judge Acock is not locking people up for restitution. I mean, in the Sensings case, they never went to prison. Was there ever any assertion in the proceedings below that the Sensings were failing to keep up with their payments, that they'd fallen behind? They were current on the $150 a month at the first hearing. Their supervision was about to expire. And the question is, well, what are you going to do about this hundreds of thousands of dollars a year? What's your plan? At that point, Judge Acock realizes they have income, more income, and they have this lump sum, and that starts the process. And I do believe they were pretty much current. There was one issue about $1,200 being due, and there was some talk about whether it was their mistake or whether they thought it was getting pulled out of their check from the government. But they were complying with the $150 a month, but not with the 10% of their income. Is there any statute or any others or positive law that sort of authorized the district court to order the Sensings to sell their property? Well, I would say in the case of a default, for sure, in 18 U.S.C. 3613A, the court can order the sale of property. Now, the question is, are they formally on that default? Outside the context of a default, I would say it's just in the general authority to enforce the sentence. That's right. And she's not changing their sentence, and she's not modifying their supervised release. She's enforcing the restitution order, which changing the payment schedule of the restitution is different than modifying their supervised release, which would trigger Rule 32. So when you get into a modification of supervised release, that's why they would go over the waiver, sign the waiver, or a revocation would be initiated, and they would have the revocation hearing. So I do think there's statutory authority, as I said before, to change the payment schedule without even having a hearing. And there's a couple of cases, not in the Fifth Circuit, where a court has ordered a change in the payment while a defendant is in prison. So the implication there, certainly there wasn't a hearing. The court was notified that they had a change in financial condition, United States v. Grigsby, which is in the Tenth Circuit from 2016, 665 Federal Appendix 701, allows the court to change restitution sua sponte, liquidated a retirement account and paid it to the victim while he was in prison. United States v. Kiles, 601 F3rd 78, that's the Second Circuit, 2010, made changes in the payment schedule while he was in prison because he started to make more money in prison. And again, the implication there is that's happening without a hearing. So probation could get all this information from the sensings about their income, their cars, their car payments, and could come to the court, and the court could change this payment schedule without even having a hearing. So if the court can do that, certainly having a hearing is another step, and that's better than just immediately going to revocation. Well, help me understand. What's the legal prong? Are you arguing that the show cause is really a proceeding for the district court to determine whether or not there's been a material change, therefore 3664K is the hook for it? Or are you arguing, no, it's just inherent authority of the judge? I understand you say it's been custom, it's been done, but I mean, what's the . . . Maybe I'm saying the same thing. I would say both of those things. But I mean, what's the legal . . . Notwithstanding whether I think personally or otherwise, hey, sounds okay to me, but now that it's been raised to us, what's the legal prong that the government is standing on to help us say okay? I would say both of those things. It is an inherent authority of the court to enforce the sentence and to find out about what's going on with their finances as part of their judgment says they're going to cooperate in regards to all financial matters, and they're going to inform the court about changes in the material financial condition. So there's an inherent authority to enforce that, but also would just say, looking at those statutes, the statute certainly contemplates the court doing things on its own motion, and that's really why I bring up the statutes is the idea that the court would do something on its own motion is not necessarily foreign to what these restitution statutes contemplate. So I think it would be both of those things, a combination of both of those things. As far as the right to counsel goes, Bearden v. Georgia only applies to indigent defendants, and so if a defendant is making a willful failure to pay or is not indigent, then Bearden v. Georgia would not apply. And certainly, again, if it's not a modification of the supervised release, but it is a change in the payment schedule, then it wouldn't trigger any of those due process concerns. It wouldn't be as if you're having a revocation hearing without a lawyer. So as long as she's changing the restitution payments, investigating their finances, it stays out of that area where you would have a right to counsel as if it were a revocation. And if you look at what happened, you know, they come in and they own these cars, and Judge Acock says, you need to sell one of those cars. Your car payments are too high. And I think it was over $1,000 combined a month. You pick. You sell one of the cars. And then they come back three months later, well, did you sell the car? I couldn't sell it. Well, what did you do? Well, I bought a $40,000 truck. I mean, that you owe $52,000 on now. So that they're trying, I mean, that just flies in the face of what Judge Acock told them to do. And so there's no surprise that Judge Acock immediately is going to question their sincerity in trying to pay this restitution. So, you know, Ms. Sensing is collecting student loan payments, student loan proceeds, while at the same time applying and getting disability. And those two things don't really go together. So Judge Acock knows, she's the one that's interacting with these defendants. She knows her impression of position to make these kind of observations. So ultimately, the question is, is it a modification of supervised release or is it a change in restitution payments? And our position is, this is a, as Judge Acock said, it's an informal financial review related to the payment of the restitution. It's not changing their supervised release. It's not changing their sentence. It's not changing the total amount of restitution. And that's something that she has the authority to do. And regardless, there are valid reasons to revoke them that they admitted to at the revocation hearing that have nothing to do with the sale of the truck and the show cause hearing. Counsel, do you agree with your friend on the other side that at least as to the truck, that both the condition to say you must sell the 2019 Dodge Ram and predicating the revocation on the failure to sell the 2019 Dodge Ram, that at least as to that one condition, that that is only part of the revocation, I'm sorry, of the show cause hearing and is therefore a modification? I think it is. I understand that it's problematic that the violation worksheet says failure to sell the truck. I think because obviously that happened at the show cause hearing and that's being called a violation of supervised release. So obviously, you would say, well, she modified their supervised release. But form over substance, what are they actually being revoked for is failure to follow the directions of the court. So you could have said their violation was, which is a part of their judgment, failure to cooperate with the payment restitution and follow the directions of the court. When you say follow the directions of the court, you mean that the purchase of the 2019 Ram, that that was the violation? Because that's the thing that's a little bit odd to me. I could understand the argument that, well, the reason the 2019 Ram is in there is because I told you no vehicles without approval of PO. You didn't get the approval of PO. So I'm unwinding the old violation rather than adding a new modification. I just want to make sure I understand your argument. I think it's all bound up. It starts with pick one of the cars to sell and then you find out that they've bought a new car and then, okay, well, you got to sell the new car. Well, I can't sell the new car. Well, you got to sell it. So I think it's bound up in all those things. But I totally understand when the violation says failure to sell the car, that that sounds like a modification supervised release. So I would just say, really, it's failure to obey the order of the court and cooperate with the collection of restitution. So, but I understand the concern. Yeah, it's true. What's the narrowest basis for us to send this back? The most narrow would just be that there are admitted violations to support the revocation and the revocation is, affirm the revocation. And even if you found the violation four was not a valid reason to revoke, the revocation and the extension of supervised release could still be valid. And then you wouldn't be in the weeds of what Judge Acock is doing day to day with these show calls hearings. So unless the court has other questions, I think that's my argument for the day. All right. Thank you. Counsel, you have right of rebuttal. May it please the court. Your honors, I'd like to respond to a couple of points that opposing counsel made. And the first being is that the judgment itself states that the sensings must pay not less than $150 a month and not less than 10% of its gross monthly income. I believe this court just recently ruled in United States v. Bautista-Gunter that the plain reading of the standard of the supervised condition should control. That does not incorporate any sort of modifications to sell your vehicles, to sell your property, to sell vehicles that you don't own title to. I believe that the plain reading suggests that if there was a modification in the way that the court has been doing with the revocation petition, is that 32.1 would be triggered and assistance of counsel would be necessary with notice and a proper opportunity to cross-examine witnesses and present evidence. Our second point, your honors, would be that opposing counsel brought up Bearden v. Georgia. And while the sensings, opposing counsel claimed that the sensings were not indigent because they were making $1,250 a month in restitution payments, the transcript suggests that they were pulling in $900 a month in the red. They were $900 in the negative even with this $1,250 a month in restitution payments. That's $15,000 a year that the sensings were paying in restitution. Our third point, your honors, if we want to talk about the new car that the sensings traded in for, the 2019 Dodge Ram truck, the district court at the very first show calls hearing suggested that the sensings need to get rid of their Jeep Cherokee. And that's the only way that they knew how. Mr. Sensing testified that he was nervous, he got scared, and he went ahead and traded it in because no one else online or at a dealership would purchase a vehicle that was that upside down. So the only way he did it was to trade it in for a more expensive truck. Now that may not, granted, that may not have been the appropriate route. But without defense counsel present, that would not have been a situation that the court does not need to continue supervision to continue to collect restitution. The Federal Debt Collection Procedures Act is a mechanism that the federal government has to continue this restitution collection through liens, garnishment, and other civil remedies. The supervised release itself was not necessary to continue that. For all these reasons, your honors, if there are no further questions. What's your response to counsel opposite when he started about the, I think it's 3664K, the circumstances where the district court could sui sponte, you know, assess whether there's been a material change, etc. You agree with that, but just say it's not applicable here? The statute is the statute and 3664 does say that. However, we still believe that 3664M1AI and M1A2 control this. Without statutory jurisdiction, there's no, or without a statutory basis, the district court simply doesn't have the sui sponte power to go ahead and modify restitution in the manner that it's currently doing. If the district court wanted to increase the payments, we believe that that is a loss of liberty. Going from $300 a month to $1,250 is a significant increase. And we believe that with an increase such as that, defense counsel should have been appointed. Last question on the probation office. If the probation officer found out about the $40,000 truck with a $52,000 note, could the probation officer have said, sell the truck, or I'm going to go file a petition to revoke your supervised release? Absolutely, the probation officer could have said that, but if, again, the petition to revoke, if that was the final conclusion, if they wanted to file a petition to revoke, they could have. We didn't get that petition to revoke until after the third show cause hearing. If there's nothing else, your honors, thank you for your time. Thank you. Thank you both counsel for briefing and argument. The case will be submitted.